FILED
IN CLERK'S OFFICE

2026 MAR 25  PM 3: 30

U.S. DISTRICT COURT
DISTRICT OF MASS.

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

ROSE DUMOULIN,

Plaintiff,

v.                              Civil Action No. _____

EQUIFAX INFORMATION SERVICES LLC,

Defendant.

---

## COMPLAINT AND DEMAND FOR JURY TRIAL

## INTRODUCTION

1. Plaintiff Rose Dumoulin brings this action for actual, statutory, and punitive damages under the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 et seq. On October 22, 2025, Plaintiff requested a copy of her Equifax consumer file. Equifax responded with a consumer disclosure that omitted material account information -- including furnisher codes, compliance condition codes, and complete payment histories -- that Plaintiff needed to identify, evaluate, and dispute multiple derogatory entries in her file. Plaintiff's file also contained a bankruptcy public record entry sourced not from the bankruptcy court but from a third-party data vendor. When Plaintiff disputed that entry in writing, Equifax reported it as verified -- a result it could not have reached through any genuine reinvestigation, because federal bankruptcy courts do not participate in Equifax's

- 1 -

automated dispute verification system and cannot respond to automated dispute inquiries. Plaintiff seeks actual damages, statutory damages, punitive damages, and costs of suit.

## JURISDICTION AND VENUE

2. This Court has federal-question jurisdiction under 28 U.S.C. § 1331 and subject-matter jurisdiction under 15 U.S.C. § 1681p, which provides that actions to enforce liability under the FCRA may be brought in any appropriate United States district court.

3. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because Plaintiff resides in the Commonwealth of Massachusetts and a substantial part of the events giving rise to these claims occurred in this District, including Plaintiff's request for her consumer disclosure, Equifax's transmission of the incomplete disclosure to Plaintiff, Plaintiff's written dispute of the bankruptcy notation, and Equifax's continued reporting of the disputed entry to third-party report users.

## PARTIES

4. Plaintiff Rose Dumoulin is a natural person residing at 26 Barry St, Randolph, Massachusetts 02368. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1681a(c).

5. Defendant Equifax Information Services LLC is a Georgia limited liability company with its principal place of business at 1550 Peachtree Street NW, Atlanta, Georgia 30309. Equifax is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f) and regularly assembles, evaluates, and furnishes consumer reports for monetary fees in interstate commerce. Equifax is subject to the disclosure obligations of 15 U.S.C. § 1681g and the reinvestigation obligations of 15 U.S.C. § 1681i.

## FACTUAL ALLEGATIONS

### A. Plaintiff's Request for Her Consumer File

6. On October 22, 2025, Plaintiff submitted a request for a copy of her consumer file from Equifax through the federally mandated disclosure portal at www.annualcreditreport.com.

7. The FCRA requires a consumer reporting agency, upon a consumer's request, to disclose all information in the consumer's file at the time of the request in a manner that is clear and accurate enough for the consumer to determine whether the reported information is correct. 15 U.S.C. § 1681g(a)(1).

### B. Equifax's Incomplete Consumer Disclosure

8. Equifax responded to Plaintiff's request with a consumer disclosure document. The disclosure omitted material data from multiple tradelines in Plaintiff's file, including furnisher identification codes, compliance condition codes, and complete historical payment information.

9. The omitted data was not cosmetic. Furnisher codes identify the entity that reported each tradeline and are necessary for a consumer to assess whether a furnisher had a permissible basis to report the account. Compliance condition codes communicate the regulatory status of an account -- for example, whether a tradeline is disputed, subject to a bankruptcy discharge, or governed by a special servicing arrangement. Historical payment data establishes the pattern of delinquency, if any, and is the primary basis on which a consumer can assess whether a reported late payment or charge-off is accurate.

- 3 -

10. Without this information, Plaintiff could not determine whether any of the derogatory entries in her file were authorized, accurately dated, properly coded, or otherwise compliant with the FCRA's requirements for consumer reporting. The disclosure Equifax provided was not clear within the meaning of 15 U.S.C. § 1681g(a) because it did not allow Plaintiff to evaluate the accuracy of the information in her file.

11. The FTC's June 30, 2000 Advisory Opinion (Darcy Letter) confirms that a consumer reporting agency that omits information from a consumer disclosure that would be included in a report furnished to a third party violates § 1681g(a). Plaintiff reasonably believes that the furnisher codes, compliance condition codes, and full payment histories omitted from her consumer disclosure were present in the underlying file data and were being furnished to third-party lenders and creditors who accessed her report.

### C. The Bankruptcy Public Record Entry and Equifax's Data Source

12. Plaintiff's Equifax consumer file included a public record entry reflecting a bankruptcy filing. That entry contained inaccurate information as reported.

13. Federal bankruptcy courts do not report consumer bankruptcy filings directly to consumer reporting agencies. The Administrative Office of the United States Courts does not furnish bankruptcy data to Equifax, and federal courts do not maintain a data-reporting relationship with Equifax or any other consumer reporting agency. Equifax sources its bankruptcy public record data from third-party data vendors -- commercial aggregators that compile public record information from court dockets and re-sell it to consumer reporting agencies.

14. Equifax's consumer disclosure did not identify the bankruptcy court as the source of the public record entry in Plaintiff's file. The source identified in the disclosure was a third-

party data vendor, not the court itself. This is consistent with Equifax's practice of sourcing bankruptcy public record data exclusively from commercial aggregators rather than from the authoritative court records.

15. Because Equifax sources its bankruptcy data from a third-party vendor rather than from the court, the accuracy of any bankruptcy entry in Equifax's system depends entirely on the vendor's data -- not on the court record that is the legal and authoritative source of the information.

### D. Plaintiff's Dispute and Equifax's Structurally Deficient Reinvestigation

16. On or about July 23,2025  Plaintiff submitted a written dispute to Equifax by certified mail disputing the accuracy of the bankruptcy public record entry in her file and requesting that Equifax investigate and correct or delete the inaccurate notation.

17. Plaintiff's dispute provided sufficient identifying information for Equifax to locate the bankruptcy entry in her file, including the case reference and the nature of the reported inaccuracy. Plaintiff's dispute was not frivolous.

18. Upon receiving Plaintiff's dispute, the FCRA required Equifax to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate or unverifiable, and to delete or modify any such information within thirty days. 15 U.S.C. § 1681i(a)(1)(A).

19. Equifax's primary mechanism for conducting consumer dispute reinvestigations is the Automated Consumer Dispute Verification (ACDV) process, conducted through the e-OSCAR web platform. Under this system, when Equifax receives a consumer dispute, it transmits an ACDV form to the furnisher of the disputed information requesting verification.

20. Federal bankruptcy courts do not participate in e-OSCAR. Courts cannot receive ACDV requests and cannot respond to them. As a result, Equifax had no mechanism to verify the disputed bankruptcy entry with the court that is the legal and authoritative source of bankruptcy records. Any reinvestigation Equifax conducted was necessarily limited to re-querying the same third-party vendor that originally supplied the data -- not the court itself.

21. Re-querying the original third-party vendor that supplied contested data is not a reasonable reinvestigation. A consumer reporting agency cannot satisfy its § 1681i(a) duty by confirming with the source of allegedly inaccurate information that the information it originally provided remains the same. See Cushman v. Trans Union Corp., 115 F.3d 220, 225 (3d Cir. 1997) (a CRA cannot simply parrot back the original furnisher's response when the circumstances call for more). The circumstances here call for more: the authoritative source is a federal court that Equifax's system cannot reach.

22. Following its purported reinvestigation, Equifax notified Plaintiff that the bankruptcy entry had been verified and would remain in her file. That verification was not based on any communication with the bankruptcy court or any court record. It was based solely on the response of the same third-party vendor that originally furnished the disputed data.

23. Equifax failed to delete or correct the bankruptcy notation within the thirty-day reinvestigation period. The entry remained in Plaintiff's file and continued to be furnished to third-party report users after Plaintiff's dispute.

**E.  The Incomplete Disclosure Compounded Plaintiff's Inability to Dispute**

24. Equifax's failure to provide a complete disclosure under § 1681g(a) directly compounded the harm caused by its failed reinvestigation of the bankruptcy entry. Because Equifax's

disclosure omitted furnisher codes and compliance condition codes, Plaintiff could not identify the source of the bankruptcy entry, confirm which vendor had supplied it, or frame the most effective dispute challenging the vendor's data rather than the court record itself.

25. Plaintiff made multiple follow-up attempts -- including phone calls to Equifax customer service -- to obtain the missing information and to challenge the continued reporting of the bankruptcy notation. Those attempts were unsuccessful.

### F. Equifax's Dissemination to Third Parties and Harm to Plaintiff

26. During the period in which Plaintiff's file contained the inaccurate bankruptcy notation and the incomplete tradeline data, Equifax continued to furnish consumer reports concerning Plaintiff to third-party lenders, creditors, and other report users. Those reports contained both the disputed bankruptcy entry and the incomplete tradeline data that Plaintiff had been unable to challenge because of Equifax's deficient disclosure.

27. The dissemination of Plaintiff's consumer reports -- containing inaccurate and incomplete information -- to third parties caused concrete harm analogous to the tort of defamation. TransUnion LLC v. Ramirez, 594 U.S. 413, 432 (2021). Plaintiff's injury is concrete and particularized, not merely a risk of future harm.

28. As a direct and proximate result of Equifax's conduct, Plaintiff suffered concrete harm, including [insert specific adverse credit action -- denial, higher rate, reduced limit -- with date and adverse action letter as Exhibit E if available].

29. Plaintiff also suffered significant non-economic actual damages, including severe anxiety, insomnia, and depression arising from her inability to identify, challenge, or resolve the inaccurate and incomplete information in her file.

- 7 -

30. Plaintiff suffered disruption to her work performance and daily activities caused by the time and effort she devoted to making follow-up inquiries to Equifax, preparing her dispute, and monitoring whether Equifax would correct its reporting.

31. Plaintiff also incurred out-of-pocket expenses, including costs related to obtaining credit repair assistance and therapy, as a direct result of Equifax's failure to provide a complete disclosure and its failure to conduct a genuine reinvestigation of the disputed bankruptcy entry.

## APPLICABLE LEGAL STANDARDS

32. Section 1681g(a)(1) requires a consumer reporting agency to disclose to the consumer, upon request, all information in the consumer's file at the time of the request. 15 U.S.C. § 1681g(a)(1). The operative question is whether the disclosure is sufficiently clear that the consumer can determine the accuracy of the information. Alexander v. Equifax Info. Services, LLC, 2018 WL 3025939 (D. Nev. June 15, 2018). A disclosure that omits material data fields -- such that the consumer cannot identify the source, regulatory status, or payment history of a reported account -- is not clear within the meaning of § 1681g(a).

33. Section 1681e(b) requires a consumer reporting agency to follow reasonable procedures to assure maximum possible accuracy of all information in consumer reports. 15 U.S.C. § 1681e(b). The First Circuit has held that this standard covers both outright inaccuracies and information that is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions. Chiang v. Verizon New England Inc., 595 F.3d 26, 37 (1st Cir. 2010). Publishing a bankruptcy entry sourced exclusively from a

third-party vendor without any procedure to verify accuracy against court records does not constitute maximum possible accuracy.

34. Section 1681i(a)(1)(A) requires a consumer reporting agency, within thirty days of receiving a written consumer dispute, to conduct a reasonable reinvestigation to determine whether disputed information is inaccurate or unverifiable, and to delete or modify any such information. 15 U.S.C. § 1681i(a)(1)(A). A reinvestigation that consists solely of re-querying the original vendor that supplied the disputed data -- without any attempt to consult the authoritative source of the information -- is not a reasonable reinvestigation. Cushman v. Trans Union Corp., 115 F.3d 220, 225 (3d Cir. 1997).

35. Willful noncompliance under 15 U.S.C. § 1681n includes conduct that is recklessly indifferent to a known risk of violating the FCRA. A defendant acts recklessly when its interpretation or implementation of a statutory obligation was not only wrong but objectively unreasonable. Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 57-58, 70 (2007).

36. Article III standing is satisfied where Equifax disseminated consumer reports containing inaccurate and incomplete information about Plaintiff to third-party report users. TransUnion LLC v. Ramirez, 594 U.S. 413, 432 (2021).

## COUNT I

### Negligent Noncompliance -- Failure to Provide Complete Disclosure

### 15 U.S.C. §§ 1681g(a), 1681o

37. Plaintiff incorporates by reference Paragraphs 1 through 36.

38. Section 1681g(a)(1) required Equifax, upon Plaintiff's October 22, 2025 request, to disclose all information in Plaintiff's consumer file in a manner clear enough for Plaintiff to determine the accuracy of the information.

39. Equifax negligently failed to comply with § 1681g(a)(1). The disclosure Equifax provided to Plaintiff omitted material data fields -- including furnisher codes, compliance condition codes, and complete historical payment data -- that were part of Plaintiff's consumer file and were being furnished to third parties. The omissions rendered the disclosure unclear within the meaning of § 1681g(a) and directly impaired Plaintiff's ability to identify and dispute the inaccurate bankruptcy notation and other derogatory entries.

40. As a direct and proximate result of Equifax's negligent noncompliance, Plaintiff suffered actual damages as described in Paragraphs 28 through 31.

41. Plaintiff is entitled to recover actual damages pursuant to 15 U.S.C. § 1681o(a)(1) and costs of suit pursuant to 15 U.S.C. § 1681o(a)(2).

## COUNT II

### Negligent Noncompliance -- Failure to Maintain Maximum Possible Accuracy

### 15 U.S.C. §§ 1681e(b), 1681o

42. Plaintiff incorporates by reference Paragraphs 1 through 41.

43. Section 1681e(b) required Equifax to follow reasonable procedures to assure maximum possible accuracy of all information in Plaintiff's consumer reports, including the bankruptcy public record entry.

44. Equifax negligently failed to follow reasonable procedures to assure maximum possible accuracy. Equifax's practice of sourcing bankruptcy public record data exclusively from third-party commercial vendors -- without any procedure to verify that data against court records before publishing it in a consumer report -- does not constitute maximum

possible accuracy within the meaning of § 1681e(b) and Chiang v. Verizon New England Inc., 595 F.3d 26, 37 (1st Cir. 2010).

45. As a direct and proximate result of Equifax's negligent noncompliance, Plaintiff suffered actual damages as described in Paragraphs 28 through 31.

46. Plaintiff is entitled to recover actual damages pursuant to 15 U.S.C. § 1681o(a)(1) and costs of suit pursuant to 15 U.S.C. § 1681o(a)(2).

## COUNT III

### Negligent Noncompliance -- Failure to Conduct Reasonable Reinvestigation

### 15 U.S.C. §§ 1681i(a), 1681o

47. Plaintiff incorporates by reference Paragraphs 1 through 46.

48. Section 1681i(a)(1)(A) required Equifax, within thirty days of receiving Plaintiff's written dispute, to conduct a reasonable reinvestigation of the disputed bankruptcy entry and to delete or modify the entry if found to be inaccurate, incomplete, or unverifiable.

49. Equifax negligently failed to conduct a reasonable reinvestigation. Equifax's reinvestigation of the disputed bankruptcy entry was structurally incapable of producing a genuine verification: federal bankruptcy courts do not participate in e-OSCAR and cannot respond to ACDV requests, so Equifax had no means of confirming the accuracy of the disputed entry with the court that is its authoritative source. Equifax's purported verification consisted of re-querying the same third-party vendor that originally supplied the disputed data, which does not satisfy the reasonable reinvestigation standard. Cushman v. Trans Union Corp., 115 F.3d 220, 225 (3d Cir. 1997).

50. Equifax failed to delete or correct the bankruptcy notation following its reinvestigation. The entry remained in Plaintiff's file and continued to be furnished to third-party report users.

51. As a direct and proximate result of Equifax's negligent noncompliance, Plaintiff suffered actual damages as described in Paragraphs 28 through 31.

52. Plaintiff is entitled to recover actual damages pursuant to 15 U.S.C. § 1681o(a)(1) and costs of suit pursuant to 15 U.S.C. § 1681o(a)(2).

## COUNT IV

### Willful Noncompliance with the FCRA

### 15 U.S.C. §§ 1681g(a), 1681e(b), 1681i(a), 1681n

53. Plaintiff incorporates by reference Paragraphs 1 through 52.

54. Equifax's noncompliance with 15 U.S.C. §§ 1681g(a), 1681e(b), and 1681i(a) was willful within the meaning of Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47 (2007), because Equifax's conduct was at minimum recklessly indifferent to a known risk of violating each of those provisions.

55. As to § 1681g(a): Equifax knew or recklessly disregarded that § 1681g(a)(1) requires disclosure of all information in a consumer's file, including furnisher codes, compliance condition codes, and complete payment histories, in a manner clear enough for the consumer to evaluate accuracy. The FTC's June 30, 2000 Advisory Opinion (Darcy Letter) placed Equifax on public notice of this requirement more than two decades ago. Continued omission of this data from consumer disclosures is objectively unreasonable.

56. As to § 1681e(b): Equifax knew or recklessly disregarded that publishing bankruptcy public record data sourced exclusively from third-party commercial vendors -- without

any procedure to cross-check that data against authoritative court records -- fails to assure maximum possible accuracy. Equifax has been a party to FCRA litigation involving disputed bankruptcy entries for years and cannot credibly claim ignorance of the structural gap between its vendor-sourced data and the court records that are the legal source of truth for bankruptcy filings.

57. As to § 1681i(a): Equifax knew or recklessly disregarded that reporting a disputed bankruptcy entry as "verified" after an automated reinvestigation that never contacted the bankruptcy court -- because federal courts do not participate in e-OSCAR -- is not a reasonable reinvestigation. Equifax's own operational structure makes it impossible for it to genuinely verify a disputed bankruptcy entry through its standard ACDV process. Reporting disputed entries as verified when verification is structurally impossible is objectively unreasonable conduct under Safeco.

58. The systemic nature of these failures is further evidenced by the Consumer Financial Protection Bureau's January 2025 lawsuit against Experian Information Solutions, Inc., CFPB v. Experian Information Solutions, Inc., No. 8:25-cv-00024 (C.D. Cal. filed Jan. 7, 2025), which illustrates the extent to which disclosure and reinvestigation failures at national consumer reporting agencies are known systemic risks -- not isolated errors.

59. As a result of Equifax's willful noncompliance, Plaintiff is entitled to actual damages or statutory damages of not less than $100 nor more than $1,000 per violation pursuant to 15 U.S.C. § 1681n(a)(1)(A), punitive damages pursuant to 15 U.S.C. § 1681n(a)(2), and costs of suit pursuant to 15 U.S.C. § 1681n(a)(3).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Rose Dumoulin respectfully requests that this Court enter judgment against Defendant Equifax Information Services LLC as follows:

A. Actual damages in an amount to be determined at trial, including damages for emotional distress, anxiety, insomnia, interference with daily activities, lost time, and out-of-pocket expenses, pursuant to 15 U.S.C. §§ 1681n(a)(1)(A) and 1681o(a)(1);

B. Statutory damages of not less than $100 nor more than $1,000 per violation pursuant to 15 U.S.C. § 1681n(a)(1)(A);

C. Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

D. Costs of suit pursuant to 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2);

E. Prejudgment and postjudgment interest to the extent permitted by law; and

F. Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands trial by jury on all issues so triable.

Respectfully submitted,

Dated: _____3/26/26_____

*Rose Dumoulin*

Rose Dumoulin

rdumoulin@yahoo.com